Number 191429, Robert Amrhein et al. v. eClinical Works, LLC. May it please the Court, good morning. My name is Patrick Grewe. I am representing the plaintiff appellants in this matter, Robert Amrhein and Randy Cern. I'd like to reserve two minutes for rebuttal. Yes, and Mr. Grewe, could you just pull the mic toward you? I just want to make sure that our recording devices pick everything up. In Katz v. Pershing, this Court stated that the innovations and problems of the electronic age have created new challenges for this Court, but the venerable principles of our jurisprudence can guide us on this frontier. This is one of those cases that is at the leading edge of that frontier, and it's one that this Court and others are going to be asked to address in the future. My clients have standing under Article III of the Constitution under these Court's principles. This case was brought as a potential class action, but the case was dismissed, and so what we have here today is just the question of whether the named plaintiffs have standing. Article III standing has the three familiar elements, traceability, redressability, and injury in fact. There's no dispute that there's no issue today of traceability, redressability. What we're focused on today is the injury in fact element, which requires two things, the invasion of a legally protectable interest and an injury that is concrete and particularized and not hypothetical or conjectural. The defendants have alleged that we have not pleaded properly concreteness and that we have not alleged an injury that is not hypothetical or conjectural. Concreteness and particularity, the Supreme Court clarified in Spokio v. Robbins, are two separate elements that are considered separately, and so particularity is not an issue here. We're again focusing on the concreteness element. With respect to concreteness, Federal courts have said that a concrete injury can either be tangible or intangible, and we have alleged both tangible and intangible injuries. For a tangible injury, pecuniary harm, the quintessential harm, is what we're alleging. To wit, our medical records have been compromised by the defective software. We can't rely on them. The plaintiffs are going to have to find a, they're going to have to remediate their medical records. They're going to have to go in, audit them, determine whether they are accurate or not. And the fact that they're not accurate is itself a harm that gives rise to an injury. The remediation is not a simple process. Are you saying, I mean, both of these people are deceased now, unfortunately. That's right. Are you saying that the estate has some kind of ongoing interest in correcting medical records of deceased people? I think so, for two reasons. The first is because the injury occurred not at, the injury occurred at the moment that they, that the records were entered into the system. Just as you're answering that, just to be precise, when you say the injury occurred, the injury in fact occurred. Correct. Yeah. And injury in fact can be actual or imminent. That's correct. So is the injury in fact that occurred actual or imminent in your view? Because in your brief, you only refer to it as an imminent injury. Yeah. Which is fine, because that can constitute injury in fact. Right. I think it is ultimately an imminent injury. Okay. How can that possibly be something that a dead person has standing to sue? Sure. Because if it was imminent, if they're not around, then it's over, right? I think the imminence is looked at from the moment that the information is entered into the records, the information is entered into the system. That's the moment when we look at the imminence of injury. Right. And then if they are deceased, it would be moved. I don't think so. Why? Because there are circumstances where even after someone is deceased, the accuracy of their medical records may be important. If their only harm was an imminent one, upon them being deceased, they're not at risk of that happening to them. Well, I don't think, to back up a little bit, I don't necessarily think that we're arguing just imminence. In your brief, you don't mention anything other than imminence. Well, I think... You don't make an argument that there was an anxiety that the person suffered during their life, that the estate has suffered some anxiety about that and would need to know it. The only argument is that there is this imminent need to correct. But once the person is deceased... Or that the error somehow led to a misdiagnosis or a test or something which caused them harm. There's no allegations about that. There are allegations in the complaint, and specifically with the two named plaintiffs. Ms. Monticelli, the doctor had ordered a diagnostic test that did not then show up in her records later on. And so she was never informed that she needed to get that test. And as a result, they missed an aneurysm that eventually led to her death. In Mr. Todd's case, he had brought soup because his doctor had missed stage 3B lung cancer. And in litigating against the doctor, they found that his medical records were jumbled. And they weren't able to rely on those medical records in the course of that litigation. And those allegations are in the complaint. I believe paragraph 42 speaks to Mr. Todd specifically. And the allegations of Ms. Monticelli are a few paragraphs before that. I saw those allegations, but I didn't see allegations as to how that information caused actual harm. Sure. It was that the failure to take the test somehow led to the death. I think that is alleged in the complaint. The cause of her death was that aneurysm. And if she had had the test, I believe the MRA was the test, if she had had the test, they could have detected that and there would have been a procedure available that would have corrected it and prevented it in the end. Going back to looking at intangible injury, Spokio tells us that the court is informed by history and the judgment of Congress. And Congress can create rights to recovery for injuries that haven't previously had remedies. I don't think that's really the case here, but I will note that the cases — Can I just — this is from your brief. Plaintiffs sufficiently allege a risk of imminent harm analogous to the risk data breach victims have. Plaintiffs risk being subject to misdiagnosis or mistreatment because their medical records are inaccurate the same way the data breach victims are. Plaintiffs here risk a greater injury. This is from the summary of the argument. There's never a statement that the standings predicate on the fact that there was an actual harm of the kind you just related within the complaint. Sure. You know, again, I think the intangible injury still exists regardless of whether they're deceased or not. The problem — But why? Sorry? I still don't understand. Sure. Why? Well, we're looking at — in our reply brief, we used the analogy of defective tires. You know, about 20 years ago, there was the Bridgestone-Firestone debacle where their tires were defective. People were on the road using these tires, and they may burst. You may end up being injured. There hasn't been actual harm. There's an imminent harm. But the deceased driver would have trouble bringing an argument that they are at risk of having an accident. Sure. But again, I think that with respect to a person who's deceased, I think the problem is that the injury occurred prior to their death, and even after their death, there may still be circumstances in which the accuracy of their medical records is important. Well, maybe, but I'm saying that it can't be because of the risk of a misdiagnosis. That's the — you know, I understand what you're saying. The point is that, again, where I think the time frame is not — I think the time frame is what we need to be looking at. When did that harm actually occur? And the harm occurred while they were still alive. The fact that they're deceased now doesn't bear on the fact that they still had a harm at the time. Well, if the harm is a risk of misdiagnosis, and they then are deceased, that moots the claim. Again, I don't think so, because — Well, they're no longer at risk of misdiagnosis after they're deceased. Well, I think there are circumstances in which a diagnosis or someone may need to rely on those medical records after they're deceased. And that's, I think, the distinction. You know, in the case of medical malpractice, which were the two main plaintiffs here were both involved in, and I believe — But it's not the decedent — I'm sorry? It's not the decedent who's at risk any longer. If someone else needs to rely on the medical records, it would perhaps be a third party, but it's not the decedent. Well, I think it would be the decedent's estate, which is not really, I think, a — legally, obviously, they're separate entities, but it seems they have the same interests, they have the same rights. You know, we have to show that these harms are related to a harm that was traditionally — So is there anything in the complaint that identifies the harm as the need of the estate to spend money to correct the record for purposes of facilitating whether there was a misdiagnosis? I'm not sure that it's particularly styled in that way. But we do allege that there has — there needed to be remediation of the medical records. But were these folks alive when this all started? Yes, they were. I believe — actually, let me step back. Mr. Tot was still alive. I believe Ms. Monticelli was deceased when they discovered that the records were willingness. All right. So he had a risk during his lifetime, you're saying? Yes. And he had — again, he had — he was misdiagnosed with stage 3B lung cancer, and when suit was brought, they saw that his medical records were listing symptoms in 2012 that he hadn't actually started suffering until 2014. So I think there was certainly an issue there, and it complicated his ability to seek redress because of those errors. And the same thing, you know, and similarly, Ms. Monticelli, because of that — because of the failure to refer her to the specialist, that — Well, you're shifting. Now you're making the argument that there was actual harm from a misdiagnosis traceable to the error in the record. Well, I'm — But in your brief, you're focused on a risk of a misdiagnosis that will occur in the future. Yes. With respect to a risk of a misdiagnosis that's going to occur in the future, that is not a risk that a deceased person faces. I come back to, again, you know, that I do think there are circumstances where a — in a state where we would have an interest in remediation of medical records. But then you tell me that's not described as any kind of clarity in the complaint. I'm sorry? You said that possible theory of liability and injury is not specified with any clarity in the complaint. Well, I think it's in there. I think that we certainly lay out those situations in there. And they are, I think, part and parcel of our claims. And I think under the liberal pleading standard, I think that you can draw the inference that that is part of what we're alleging. Thank you. May I please report to James Carroll for L.E.E. Clinical Works, just to clear it up. There's nothing whatsoever in the complaint here that was presented to the district court below with respect to some theory that the estate has a continuing interest in the remediation of medical records for the benefit of heirs. That's never been presented below. Frankly, it's never been presented in the briefing on this motion either. The defective tire analogy, however, which was argued on the reply brief, brings the case into sharp deletion. Those cases, to the extent standing is found to exist in the defective tire cases, standing is granted on a couple of different theories. One is a theory of effectively the benefit of the bargain, that the plaintiff who purchased the tire, unlike these plaintiffs here, didn't get what they were supposed to get. Not dissimilar in some respects from the situation in Guthersen. And so there, you've got a situation where the plaintiff doesn't have the benefit of the bargain, can get the standing on that basis. That doesn't apply here at all. These people, of course, didn't purchase the software, didn't even use the software. The second theory in the defective tire that I believe counsel was alluding to is this notion of potential future injury. And there, where the parties are deceased, there can be none. There can be none. And so that analogy just draws into focus why there can't be standing in this case. What was presented to the district court below as the theory of injury with respect to each and every of the five counts was identical. And it said plaintiffs had been injured in that no member of the class can rely on the accuracy and integrity of the medical records. That's what was presented below. Of course, that doesn't work because the injury in fact analysis, the entirety of the standing analysis, can't be done on the basis of some absent class member. It has to be done on the basis of the actual parties bringing the case. With respect to Tott, there's an allegation that his records were incorrect in some way, but no attempt whatsoever to connect that to any actual injury. With respect to Monticelli, the allegation is indeed that Monticelli died of an event that might have been detected and prevented had the records required, suggesting some test should have been taken, had that test been taken. But the plaintiffs aren't suing about that in this case. In this case, they're suing about remediation for the class records of people who are still alive. They already litigated the wrongful death case. For that matter, so too did Tott. This case is entirely about the desire to have a class action, a massive class action for the remediation, investigation, and audit of medical records that would have no impact whatsoever on the only two plaintiffs who are suing. And I respectfully submit to that. They make an argument in the reply brief that the descendants have an interest in accurate records because for their own misdiagnosis, potential for misdiagnosis. So what's wrong with that argument? What's wrong with that argument, among other things, is it's not in the complaint and it was never presented to Judge Stern. Okay, but on the merits, what's wrong with it? On the merits, it's too ethereal. It falls prey to the warning in the Katz case of causation not being an academic exercise in the conceivable. The complaint has to have something concrete that would support invoking the court's jurisdiction to decide that case. And these plaintiffs don't offer it. I'm not suggesting that eClinical Works is somehow immune from suit. They're certainly not. The complaint itself references other suits. But these plaintiffs lack injury. They don't have the ability to assert standing. Thank you. Now, what about the argument that was made a little earlier this morning that as of the, well, I think it was as of the time of the complaint, one of them may still have been alive. I'm not sure. I only have the amended complaint here with me. It certainly wasn't true as of the amended complaint. I don't think it's true as of the original complaint either. I think both of them had been prosecuting wrongful death cases previously. But the notion that they were alive as of the time, it's not in the case as I know it, and I don't think it's right. What's the law on if one of them had been alive at that time? Could we now on appeal be considering imminence? It wouldn't matter because to meet the standards for standing, it's not just injury and causation. It's also redressability. There'd be no redress available to a decedent. Thank you. Thank you. Actually, before you, just on that last point, you said there's no redressability to the decedent. But if the, presumably the idea would be for the person who was alive, the redressability would take the form of damages to that person. Yes. So that when they die, the damages would just be collected by the estate. What's the redressability problem? Well, the redressability problem as it relates to this complaint is that that's not what is being claimed. The only claim in this case is for the audit, monitoring, and remediation of medical records. It's not a claim for money damages. So Monticelli, for example, who's already pursued a wrongful death case, isn't seeking money damages with respect to the alleged inaccuracy that caused, so they allege, the cerebral aneurysm. That's not, as Judge Stearns below correctly said, they make factual allegations in the complaint. But when you look and see what they're suing for, it is not that. It's meant to be broad and applicable to a mammoth class action because that's really what the pleading was designed to support. There's no request for damages? There's no request for damages? The prayer for relief has a typical listing of everything under the sun. Including damages? I think, as the court may so determine. So that might mean some of the relief they seek would be not redressable for the purpose of standing. They would have standing to get damages. Well, they wouldn't have the standing unless it's the case that they had actually suffered the harm. So with respect to the claim that they do allege for monitoring or auditing, for example, one of the things that's absent, entirely absent from the complaint, is any suggestion that either of the plaintiffs had actually expended costs that would be recoverable. What they're saying is, we want our cases, we want there to be auditing and investigation at the end of the case. They don't allege to have actually done it. Even Monticelli doesn't have an allegation, we spent X dollars to try and understand and audit what was wrong with the medical records. I'm just going back to the one who was alive. I thought you were agreeing that there was a claim about the misdiagnosis that that plaintiff made. So I'm not agreeing that any of them were alive. In fact, I think it's not the case that that was the case. With respect to Monticelli, Monticelli includes factual allegations that say, the doctor wanted me to have the test, the test somehow disappeared from the records, had I had the test I wouldn't have had the cerebral hemorrhage. That's alleged in the factual part of the complaint. When you look at what the counts are, and this is something that in Judge Stern's opinion he focuses on, the counts aren't suing for that wrongful death. They're suing for a prospective audit of the medical records, which Monticelli doesn't even allege that she's done. But doesn't she, don't they allege that they will expend money, that that is an expense that they will necessarily have to incur and therefore is compensable? I think that's effectively the relief sought. They would like, at the end of the conclusion of class action, for there to be some order requiring someone to conduct some sort of audit, monitoring, remediation, what have you, of the medical records for the entirety of the class. That can't help Monticelli. She's gone to her greater reward. There's no imminent risk that that would save her from. She's gone. Same is true with Topp. So that's why I say, I'm not suggesting that the company is in any way immune from suit. These two plaintiffs haven't alleged an actual injury in fact, and they can't allege imminent harm. Thank you. I just want to clarify one thing, and maybe I misspoke because it sounded like there was some confusion. Mr. Topp was deceased at the time the complaint was filed. And Ms. Monticelli was also deceased. The point I was trying to make was that Mr. Topp was alive when he learned that his medical records had been compromised. He was alive during part of that suit. There was another point that we haven't actually suffered harm because we haven't alleged that we've actually made payments in order to remediate the medical records. I don't think that's required. I think that's asking too much of us. There's an injury if someone damages personal property. There's no requirement that they actually go out and get it repaired before bringing the suit. That's because there's an actual injury, not an imminent one. I understand what you're saying. In the context of an imminent injury, not an actual one. In the context of an imminent injury, I still don't think that's required. I think the idea is that it's required when the plaintiff is deceased because it's hard to see why you need the imminent harm as the future expenditure. Correct. The imminent harm that we allege is that these medical records, the errors in the medical records are going to cause some harm. To the deceased person? At this point, to the estate. What's it going to do to the estate? Again, in the case of Ms. Monticelli or Mr. Topp, these medical records are impairing their ability to, for example, prosecute their wrongful death suits. It increases their burden of proof. If I look at the counts of the complaint, will I see that as one of the counts? I don't think it's explicitly stated, but that is part of the grommet of the allegations in the complaint. Thank you.